UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-276-RJC
3:20-cr-306-RJC-DSC-1

| | |
|---|---|
| KONGMANY SIBOUNHEUNG, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. )<br>_____ ) | **ORDER** |

**THIS MATTER** is before the Court on Petitioner's *pro se* Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Doc. 7], the United States' Motion to Dismiss [Doc. 9], and the Petitioner's Motions for Leave to Expand Record [Docs. 12, 14].

I.   BACKGROUND

Petitioner was charged by Bill of Information[1] with a single count of possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). [3:20-cr-306 ("CR") Doc. 12]. Petitioner pleaded guilty pursuant to a written Plea Agreement and he admitted that he is, in fact, guilty of the charged offense. [CR Doc. 13 at ¶ 1]. The Plea Agreement provides that Petitioner's breach of the agreement would "permit the United States to proceed on any dismissed, pending, superseding or additional charges…" and, if applicable, an Information pursuant to 21 U.S.C § 851. [Id. at ¶ 3]. The Plea Agreement explains that the offense is punishable by a maximum of 20 years' imprisonment, a fine of $1,000,000, or both, and at least three years of supervised release. [Id. at ¶ 4].

---
[1] The Petitioner waived indictment. [CR Doc. 15].

1

The parties agreed to jointly recommend that: the amounts of controlled substance that was known to or reasonably foreseeable by Petitioner was a converted drug weight of at least 80 kilograms but less than 100 kilograms, with a base offense level of 22; the plea is timely for purposes of acceptance of responsibility, if applicable; if the Court determines from the Petitioner's criminal history that the career offender provision (U.S.S.G. § 4B1.1) applies, such provision may be used in determining the sentence. [Id. at ¶ 7]. The parties remained free to seek a departure or variance from the applicable guideline range at sentencing, and to argue their respective positions regarding any other specific offense characteristics, reductions, and enhancements to the offense level. [Id.].

The Plea Agreement further provides that: the Court would consider the advisory U.S. Sentencing Guidelines; the Court had not yet determined the sentence; any estimate of the likely sentence is a prediction rather than a promise; the Court would have the final discretion to impose any sentence up to the statutory maximum for each count; the Court would not be bound by the parties' recommendations or agreements; and Petitioner would not be permitted to withdraw his plea as a result of the sentence imposed. [Id. at ¶ 6].

The Plea Agreement provides that there is a factual basis for the guilty plea, and that Petitioner read and understood the written Factual Basis that was filed with the Plea Agreement, which may be used by the Court, U.S. Probation Office, and United States without objection for any purpose, including to determine the applicable advisory guideline range or the appropriate sentence. [Id. at ¶ 10]. The Plea Agreement further provides that the Factual Basis does not necessarily represent all of the conduct relevant to sentencing, and that the Government may submit a Statement of Relevant Conduct to the Probation Office and present the Court with additional relevant facts for purposes of sentencing. [Id. at ¶ 11].

2

Case 3:20-cr-00306-RJC-DSC   Document 36   Filed 07/24/23   Page 2 of 14

The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty, including the right: to withdraw the guilty plea once the Magistrate Judge has accepted it; to be tried by a jury; to be assisted by an attorney at trial; to confront and cross-examine witnesses; and not be compelled to incriminate himself. [Id. at ¶¶ 12-14]. The Plea Agreement acknowledges that Petitioner had discussed with defense counsel his post-conviction and appellate rights, and he expressly waived those rights except for claims of ineffective assistance of counsel or prosecutorial misconduct. [Id. at ¶¶ 15-16]. The Plea Agreement provides that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." [Id. at ¶ 26].

The Factual Basis that was filed along with the Plea Agreement provides in relevant part:

> On or about March 6, 2018, **Kongmany SIBOUNHEUNG** possessed with intent to distribute a quantity of mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance[], in Mecklenburg County….
>
> **SIBOUNHEUNG** knew that the cocaine he possessed with the intent to distribute was a controlled substance[] under the law at the time of the possession.

[CR Doc. 14 at 1] (paragraph numbers omitted).

On October 2, 2020, a Rule 11 hearing came before a United States Magistrate Judge. See [CR Doc. 16] (Acceptance); [CR Doc. 18] (Courtroom Recording). Petitioner stated under oath that he received a copy of the Bill of Information, discussed it with counsel, and fully understood the charge and the maximum penalty that could apply to him. [CR Doc. 16 at 1]. He admitted that he is, in fact, guilty of the charged offense. [Id. at 3]. Petitioner agreed that: he understood that pleading guilty may cause him to be deprived of certain civil rights; he discussed with counsel how the sentencing guidelines may apply to his case; the Court would not be able to

3

determine the sentence until a PSR has been prepared and Petitioner has had an opportunity to comment on it; he may receive a sentence that is different from that called for by the guidelines; and he would have no right to withdraw the plea even if he receives a sentence more severe than he expects. [Id. at 2]. Petitioner acknowledged the rights he was waiving by pleading guilty, and stated his understanding that the case would proceed directly to sentencing. [Id. at 2-3].

The Plea Agreement was summarized in open court. [Id.]. Petitioner confirmed that he understood and agreed with the terms of the Plea Agreement, including the waiver of his appellate and post-conviction rights. [Id.]. Petitioner stated that he read the Factual Basis, understood it, and agreed with it. [Id.]. Petitioner stated that nobody threatened, intimidated, or forced him to plead guilty, and that nobody made any promises of leniency or a light sentence to induce him to plead guilty. [Id.]. Petitioner agreed had enough time to discuss any possible defenses with his lawyer, was satisfied with counsel's services, and said "[h]e's the best lawyer I've ever had." [Id. at 3].

The Presentence Investigation Report (PSR) includes the facts set forth in the Factual Basis. [CR Doc. 22 at ¶¶ 7-8]. It also includes a Statement of Relevant Conduct describing an incident on March 6, 2018, when the Charlotte-Mecklenburg Police Department (CMPD) responded to the Petitioner's apartment on an emergency call to treat Petitioner's girlfriend for a drug overdose. [Id. at ¶ 10]. Officers ultimately discovered in the Petitioner's apartment and vehicle evidence including cocaine, methamphetamine, fentanyl, and marijuana, over $35,000 in cash, baggies, a scale, a vacuum seal machine, an electronic bill counter, a firearm suppressor, and pistol ammunition. [Id. at ¶¶ 10-14]. The PSR concluded that the Petitioner accountable for 190.87 grams of cocaine, 15.3 grams of fentanyl, 1.14 grams of methamphetamine, and 1,824 grams of marijuana, for a total converted drug weight of 80.53 kilograms. [Id. at ¶ 19].

The PSR scored the base offense level as 22 because the offense is a violation of § 841(a)(1) and the Petitioner is responsible for a converted drug weight of at least 80 kilograms but less than 100 kilograms pursuant to U.S.S.G. § 2D1.1(a)(5). [Id. at ¶ 24]. Two levels were added because the Petitioner maintained a premises for the purpose of manufacturing a controlled substance pursuant to § 2D1.1(b)(12). [Id. at ¶ 25]. This resulted in an adjusted offense level subtotal of 24. [Id. at ¶ 29]. However, Petitioner is a career offender because he was at least 18 years old at the time of the offense, the offense is a felony controlled substance offense, Petitioner had at least two prior felony convictions for controlled substance offenses (possession with intent to distribute marijuana in Case No. 2:03-cr-697-3 (D.N.M), and possession with intent to distribute a controlled substance in Case No. 3:06-cr-178-3 (W.D.N.C.), and accordingly the offense level is 32. [Id. at 30]. Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 29. [Id. at ¶¶ 30-31]. Petitioner had seven criminal history points and a criminal history category of IV, however, a career offender's criminal history category is VI. [Id. at ¶¶ 46-47]. The resulting advisory guideline range was 151 to 188 months' imprisonment. [Id. at ¶ 75].

The Court adopted the PSR[2] and, in a Judgment entered on August 26, 2021, the Court sentenced Petitioner at the bottom of the advisory guidelines range to 151 months' imprisonment followed by three years of supervised release. [CR Doc. 29]. Petitioner did not appeal.

Petitioner filed the Motion to Vacate in the instant case on June 14, 2022.[3] [Doc. 1]. The Court denied Petitioner's ineffective assistance of counsel claim on the merits [Doc.2], then

---

[2] Petitioner withdrew his outstanding PSR objections at sentencing. [See CR Doc. 21 (Objections); CR Doc. 30 (Statement of Reasons)].

[3] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Lewis v. Richmond City Police Dep't, 947 F.2d 733 (4th Cir. 1991) (applying prisoner mailbox rule to § 1983 case).

vacated that Judgment to consider the Amended Motion to Vacate, which had been timely filed under the prisoner mailbox rule but was not docketed until after the Judgment had been entered. [See Doc. 6]. The Amended Motion to Vacate [Doc. 7] is now before the Court for consideration.

Petitioner argues that: (1) counsel provided ineffective assistance at sentencing; and (2) the § 841(a)(1) conviction is invalid pursuant to Ruan v. United States, 142 S.Ct. 2370 (2022). He asks the Court to vacate his conviction and sentence. [Doc. 7 at 13]. The United States filed a Motion to Dismiss arguing that Petitioner waived and procedurally defaulted the right to contest his conviction and, in any event, his Ruan claim lacks merit; and that Petitioner's claim of ineffective assistance of counsel lacks merit. [Doc. 9]. The Court informed Petitioner of his right to respond to the Motion to Vacate. [Doc. 10 (Roseboro Order)]. Petitioner filed a Response[4] arguing that the Ruan claim should be considered on the merits pursuant to § 2255(f)(3) because he is actually innocent of violating § 841, and he would not have pleaded guilty had Ruan been the law at the time he entered his guilty plea. [Docs. 11, 13]. The Government has not replied and the matter is ripe for disposition.

Also pending are Petitioner's Motions for Leave to Expand the Record. [Docs. 12, 14].[5] Petitioner asks the Court to expand the record to include Mecklenburg County court records for charges that were dismissed in state court, then transferred for federal prosecution "in violation of 21 U.S.C. § 903 of the CSA." [Id. at 2].

## II. SECTION 2255 STANDARD OF REVIEW

---

[4] Titled "Reply in Opposition of Motion to Dismiss." Petitioner separately filed two identical Responses [Docs. 11, 13], neither of which is signed. See Fed. R. Civ. P. 11. The Court will not order the Petitioner to sign the Responses at this time because, even if they were signed, they would not avoid dismissal.

[5] Petitioner again filed separate identical Motions that are unsigned. The Court declines to order Petitioner to sign them for the reasons discussed *supra*, note 4.

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION[6]

#### A. Ineffective Assistance of Counsel

First, Petitioner claims that trial counsel provided ineffective assistance with regards to sentencing.

The Sixth Amendment to the U.S. Constitution guarantees that, in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption'

---

[6] Petitioner's claims have been liberally construed, restated, and renumbered. Any argument or subclaim which is not specifically addressed in this Order, has been considered and rejected.

that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). In the context of sentencing, any amount of actual jail time has Sixth Amendment significance. Glover v. United States, 531 U.S. 198, 203 (2001). If the petitioner fails to meet the burden of demonstrating prejudice, a reviewing court need not even consider the performance prong. Strickland, 466 U.S. at 670.

Here, Petitioner contends that counsel was ineffective for failing to challenge the career offender enhancement because he lacks two qualifying predicate convictions for a controlled substance offense or a crime of violence. [Doc. 7 at 4-5]. Specifically, he contends that the Court counted a prior drug conspiracy conviction as career offender predicate, which does not support career offender sentencing.

This claim is based on a faulty factual premise. The Petitioner was enhanced as a career offender based on his prior convictions for possession with intent to distribute marijuana in New Mexico District Court, Case No. 2:03-cr-697-3;[7] and for possession with intent to distribute a controlled substance in this Court, Case No. 3:06-cr-178-3. The relevant Judgments reflect that Petitioner was convicted in Case No. -697 with violating 21 U.S.C. § 841(b)(1)(C), and in Case No. 178 with violating 21 U.S.C. § 841(a)(1) and 2. That the Petitioner was also separately

---

[7] The New Mexico District Court spells his name "Kongmany Sibounheang."

convicted in Case No. -178 for a conspiracy offense in violation of § 846, is irrelevant. Petitioner's two prior convictions for violating § 841 are valid qualifying controlled substance offenses that support the career offender enhancement, and counsel was not ineffective for failing to raise this frivolous objection.

**B.   Actual Innocence**

Petitioner contends that his § 841(a)(1) conviction is invalid pursuant to Ruan v. United States, 142 S.Ct. 2370 (2022). The Government argues that this claim was waived by Petitioner's appellate waiver, it is procedurally defaulted from § 2255 review because Petitioner failed to raise it on direct appeal, and it lacks merit. Petitioner appears to argue that his waiver and procedural default are excused by his actual innocence of violating § 841 pursuant to Ruan, and that his conviction and sentence must therefore be vacated.

Unambiguous appellate waivers that a defendant enters into knowingly and voluntarily are generally valid and enforceable. See United States v. Moran, __ F.4th __, 2023 WL 4095937 (4th Cir. June 21, 2023). There is a "narrow class of claims" that the Fourth Circuit has allowed a defendant to raise on direct appeal despite a general waiver of appellate rights. United States v. Lemaster, 403 F.3d 216, 220 n.2 (4th Cir. 2005). Examples include challenges to sentences based on a constitutionally impermissible factor, see United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992); sentences imposed beyond the authority of the district court, see United States v. Broughton-Jones, 71 F.3d 1143, 1147-49 (4th Cir. 1995); and cases in which enforcing the waiver would result in a miscarriage of justice, see United States v. Adams, 814 F.3d 178, 182 (4th Cir. 2016). Moran, 2023 WL 4095937, at *4 n.3. To establish a miscarriage of justice in enforcing an appellate waiver, a defendant need only make a cognizable claim of actual innocence. United States v. McKinney, 60 F.4th 188, 192 (4th Cir. 2023) (declining to enforce an

appeal waiver where petitioner showed that the sole offense underling his § 924(c) conviction was subsequently held to not constitute a predicate "crime of violence").

Further, "[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998) (internal citations omitted); United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001). In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, a petitioner must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. See United States v. Frady, 456 U.S. 152, 167-68 (1982); United States v. Mikalajunas, 186 F.3d 490, 492–93 (4th Cir. 1999); United States v. Maybeck, 23 F.3d 888, 891-92 (4th Cir. 1994). Actual prejudice is shown by demonstrating that the error worked to petitioner's "actual and substantial disadvantage," rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). Actual innocence means factual innocence; "this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." Mikalajunas,186 F.3d at 490.

Federal law prohibits the knowing or intentional distribution of a controlled substance "[e]xcept as authorized." 21 U.S.C. § 841(a). In Ruan, the Supreme Court addressed the mens rea element of § 841 in the context of a medical doctor who was charged with dispensing a controlled substance in violation of § 841, and asserted that the "as authorized" exception applied to him. The Supreme Court held that the knowing-or-intentional mens rea element applies not only to the distribution-related elements of the crime, but also to the question of authorization. Accordingly, if a defendant charged under § 841 "produces evidence that he or she

10

was authorized to dispense controlled substances, the Government must prove beyond a reasonable doubt that the defendant knew that he or she was acting in an unauthorized manner, or intended to do so." Id. at 2375.

Here, Petitioner argues that Ruan prevented his federal prosecution for violating § 841 because he was first arrested on North Carolina drug charges, and thus, the Government had to prove that he knowingly and intentionally violated the federal Controlled Substances Act rather than state law.

Petitioner's reliance on Ruan is misplaced. Ruan applies to defendants who raise a defense that his or her conduct was "authorized." Petitioner raised no such defense at the time he entered his plea and he presently comes forward with no evidence supporting such a defense. The record conclusively establishes that no such defense exists. In entering his knowing and voluntary guilty plea, Petitioner admitted that he possessed with intent to distribute cocaine, a "Schedule II controlled substance[]," *i.e.*, one that has a "high potential for abuse," "has a currently accepted medical use with severe restrictions…," and its abuse "may lead to severe psychological or physical dependence. [CR Doc. 14 at 1]; 21 U.S.C. § 812(b)(2). He further admitted that he knew the cocaine was a controlled substance under the law at the time of possession. [CR Doc. 4 at 1]. These admissions were sufficient to support the § 841 violation. See generally McFadden v. United States, 576 U.S. 186, 192 (the knowledge element of § 841 is satisfied by showing that the defendant knew he possessed a substance listed on the federal drug schedules). Petitioner raised no defense that his conduct was authorized and thus the Government was not obligated to prove, beyond a reasonable doubt, that he knew his conduct was unauthorized under Ruan. Indeed, the evidence in Petitioner's case, especially when viewed in light of the surrounding circumstances and Petitioner's prior drug convictions, supports that

11

Petitioner was knowingly trafficking controlled substances including cocaine, methamphetamine, and fentanyl, and that he lacked any legitimate reason to do so. [See CR Doc. 22 at ¶¶ 10-14 (Statement of Relevant Conduct)]. Moreover, the Government was not obligated to prove that Petitioner knew his conduct violated the Controlled Substances Act specifically; it only needed to prove that he knowingly and intentionally distributed cocaine, which it did through Petitioner's admissions. Any suggestion that Petitioner was somehow authorized to dispense cocaine, that he lacked the required mens rea to support his plea, that his guilty plea was involuntary, or that Ruan otherwise called his §841 conviction into question, is belied by the record and is rejected. See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

Petitioner has failed to state a cognizable claim of actual innocence and, therefore, his challenge to the § 841 conviction and sentence is waived by his knowing and voluntary guilty plea, procedurally defaulted from § 2255 review, and denied on the merits.

**C.  Motions to Expand the Record**

Rule 7 of the Rules Governing § 2255 Proceedings provides that "the judge may direct the parties to expand the record by submitting additional materials relating to the motion." Rule 7, 28 U.S.C. foll. § 2255.

In his Motions to Expand the Record [Docs. 12, 14], Petitioner seeks Mecklenburg County records showing that he was charged with "various N.C. Gen. Stat. violations that was dismissed by the N.C. District Attorney Office on November 20, 2020, then transferred by CMPD for federal prosecution, in violation of 21 USC § 903 of the CSA." [Doc. 12 at 1-2] (errors uncorrected).

Petitioner's reliance on Section 903 of the CSA is misplaced. This section simply provides that the CSA has not preempted state drug laws. See 21 U.S.C. § 903. This section

12

"does not deprive the federal government from criminalizing drug crimes proscribed by the states…." United States v. Love, 59 F. App'x 513 (4th Cir. 2003). Moreover, Petitioner's suggestion that the initiation, then dismissal, of a state prosecution somehow deprived this Court of jurisdiction over his federal charges, is meritless. See generally United States v. Ball, 18 F.4th 445, 452 (4th Cir. 2021) ("under the dual-sovereignty doctrine, the Supreme Court has long held that an offense committed under the laws of a State is not the same offense as an offense committed under the laws of the United States, even if the two offenses result from the same conduct and consist of the same elements") (citing Gamble v. United States, 139 S.Ct. 322 (2019)); see also Crist v. Bretz, 437 U.S. 28 (1978) (jeopardy attaches in a jury trial when the jury is empaneled and sworn).

The Mecklenburg County materials that Petitioner presently seeks are irrelevant to the validity of Petitioner's federal conviction and would not aid the Court in resolving this § 2255 action. Accordingly, no expansion of the record is warranted and Petitioner's Motions are denied.[8]

### IV. CONCLUSION

For the foregoing reasons, the United States' Motion to Dismiss is granted, Petitioner's Amended Motion to Vacate is denied, and Petitioner's Motions to Expand the Record are denied.

**IT IS, THEREFORE, ORDERED** that:

1. The United States' Motion to Dismiss [Doc. 9] is **GRANTED.**

2. The Amended Motion to Vacate [Doc. 7] is **DISMISSED AND DENIED**.

3. The Petitioner's Motions for Leave to Expand Record [Docs. 12, 14] are

---

[8] A Motion seeking discovery would also be denied because Petitioner has failed to demonstrate good cause, and the evidence he seeks would not change the outcome of this proceeding. See generally Rule 6, 28 U.S.C. foll. § 2255 (a judge may authorize discovery for good cause).

**DENIED**.

4. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

5. The Clerk is instructed to close this case.

Signed: July 24, 2023

Robert J. Conrad, Jr.
United States District Judge